Mario Pittoni, J.
The plaintiff seeks an injunction permanently restraining the defendant village from collecting ‘ ‘ surface waters from South Road and premises fronting thereon in the *1009 drainage ditch alongside said South Road, and from discharging said surface waters upon the premises of plaintiff. ’ ’
It seems that in 1926, Harhor Acres Realty Corporation (hereafter called the corporation) was the owner and developer of a large tract of land in the Sands Point area known as “ Harbor Acres ’ ’. In that year, 1926, this corporation built roads in the development, including South Road, and drainage ditches paralleling these roads, including the drainage ditch in issue, the one paralleling South Road. By deed dated March 27, 1953, the corporation deeded the afore-mentioned streets and drainage ditches to the defendant village. It retained some undeveloped and unsold land. This included the subject parcel which fronts approximately 300 feet along South Road. The South Road drainage ditch came to an end in front of the subject property at about 100 feet west of the easterly boundary. Before it ended, it turned in slightly, at about a 10-degree angle, toward the subject property.
On December 28, 1956, the corporation sold the subject property to the plaintiff. He claims that when he bought the subject property the area was so overgrown with trees, weeds, grass and other natural vegetation that the drainage ditch was not visible. He further says that this drainage ditch became visible only after he started to build, and his neighbor and he cleared some of the area. It was then, he testified, that the surface waters from South Road were discharged onto his land. He further states that the discharge of the surface water upon his land has washed away his topsoil and has prevented the grading and seeding of the subject property. In turn, he contends, this has impeded the sale of the property.
It should be added that sometime after he purchased the subject property, the plaintiff built a driveway over and across the drainage ditch, so that the water no longer continues to flow to and past the end of the ditch; but it flows to the elevation upon which the driveway was built and then veers off and tends to flow down onto the subject property.
Clearly, if the corporation had retained the subject land it would have no right or remedy regarding the ditch against the defendant village. The corporation created it and it would have no right against the defendant village for any flow down into its own land. ‘ ‘ Where the owner of a parcel of land conveys part of it, retaining the other part, if it appears that at the time of the conveyance the part retained has been subjected to some use or burden for the benefit of the part conveyed in a way, which is open, notorious, permanent, and of value to the part conveyed, an easement arises by implied grant, giving *1010 to the grantee of the part so conveyed the right to have the use or burden continue as theretofore for the benefit of his property.” (Walsh on Law of Property [2d ed.], § 289.)
1 ‘ Drains, waterpipes or conduits * * * may all be classed together as easements frequently arising by implied grant * * * Where it is hidden from observation, and there is nothing in the situation of the two parcels to indicate its existence arising out of some need thereof, no easement arises. But where an upper parcel would naturally be drained over the lower parcel, so that a drain through the lower parcel might reasonably be looked for, and would be disclosed on reasonable investigation, the easement will arise by implied grant.” (Walsh on Law of Property [2d ed.], § 290.)
The plaintiff’s contention that he was not aware of the ditch going partly past his land is made doubtful by the fact that the drainage ditch along South Road was clearly visible at all times at least through part of the area fronting the higher property of his immediate neighbor Sulkes. Then too, the testimony of Sulkes and of another neighbor, Salvador, tended to establish that the ditch past the Sulkes property and partly past the subject property was not obscured by anything except occasional leaves. In fact, Salvador testified that the ditch was visible in front of the subject property until it ended. Their testimony, too, tended to show that if the ditch was covered it was done so by the plaintiff’s trucks and other activities during his building and grading.
Be that as it may, the natural flow of the water to the end of the ditch has been impeded by the elevation made by the plaintiff for his driveway. The water no longer has the free way or flow to continue on to the end of the ditch and thereafter.
On these facts, the injunction should be denied in toto.
However, this is a court of equity. The court, in the presence of and at the request of counsel for both parties, has viewed the area and premises involved. The equitable solution is as follows : The defendant is directed to straighten out the end of the ditch so that it continues to run parallel with the road, to raise the end of the ditch so gradually that by the time the bottom of the ditch is at street level the running of the water therein has lost its force and has been partly distributed on the way, and to clean out the ditch so that the debris, leaves, etc., which now cover it no longer tend to hide it from view. The plaintiff, in turn, is directed to install a tube or some such conduit under the elevation for the driveway which he himself has built and may grade up his land near the roadway as other neighbors have done, so as to prevent unusual and excessive rises of water *1011 in the subject ditch from flowing onto his land. The parties are ordered to follow these directions.
This is the decision of the court pursuant to section 440 of the Civil Practice Act.
Settle decree on notice.